MICHAEL R. PAHL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C. 20044
202-598-5863
michael.r.pahl@usdoj.gov

Of Counsel:
Natalie K. Wight
United States Attorney

*Attorneys for the United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | **COMPLAINT**<br>Reduce Tax Assessments to Judgment and Enforce Federal Tax Liens Against Real Property |
| **ROBERT ALAN PFAFF,**<br>**LEFT COAST CELLARS, LLC**,<br>**THE GOODENOUGH**<br>**IRREVOCABLE TRUST**, **THE**<br>**GET REALTY TRUST, PACIFIC**<br>**LIFE INSURANCE COMPANY,**<br>**LARRY T. BURGER, and TRACIE**<br>**L. BURGER,** | |
| Defendants. | |

United States' Complaint
Case No.                                    1

Plaintiff, United States of America, brings this complaint against Robert Alan

Pfaff, Left Coast Cellars, LLC, the Goodenough Irrevocable Trust, the GET Realty Trust,

Pacific Life Insurance Company, Larry T. Burger, and Tracie L. Burger, and alleges as

follows:

1.    The United States brings this civil action seeking: (i) to obtain a judgment against

      Robert Alan Pfaff ("Pfaff") for certain assessed but unpaid federal tax liabilities

      (Counts I and II); (2) a judicial determination that Defendants, GET Realty Trust,

      Goodenough Irrevocable Trust, and Left Coast Cellars, LLC, are each alter egos

      or nominees of Pfaff that are liable for Pfaff's federal tax liabilities (Counts III,

      IV; and IV); (3) a judicial determination that Left Coast Cellars is holding certain

      real property as Pfaff's alter ego or nominee (Count V); (4) that any transfers of

      the property to Left Coast Cellars should be set aside as fraudulent (Count VI);

      and (5) an order entitling the United States to enforce its federal tax liens against

      real property and the ongoing business of Left Coast Cellars to satisfy Pfaff's

      unpaid federal tax liabilities through the sale of real property and/or the use of a

      receiver (Count VII).

2.    This action is brought at the direction of the Attorney General of the United States

      and at the request of, and with the authorization of, the Chief Counsel of the

      Internal Revenue Service (the "Service"), a delegate of the Secretary of the

      Treasury, under 26 U.S.C. §§ 7401 and 7403.

**Jurisdiction and Venue**

3.    The Court has jurisdiction over this action under 26 U.S.C. § 7402 and 28 U.S.C.

      §§ 1331, 1340, and 1345.

4.      Venue is proper in the District of Oregon under 28 U.S.C. §§ 1391(b)(2) because

the real property on which the United States seeks to foreclose is in this district.

**Defendants**

5.      Pfaff is named as a defendant to all counts of this Complaint because he owes

federal income tax, penalties, and interest and may claim an interest in the real

property and winery that is the subject of this Complaint.

6.      Left Coast Cellars, LLC is named as a defendant to Counts V, VI, and VII of this

Complaint because it may claim an interest in the real property that is the subject

of this Complaint.

7.      The Goodenough Irrevocable Trust is named as a defendant to Counts IV of this

Complaint because it is Pfaff's alter ego or nominee.

8.      The GET Realty Trust is named as a defendant to Count III of this Complaint

because it is Pfaff's alter ego or nominee.

9.      Pacific Life Insurance Company is a Nebraska corporation with a legal

department located at 700 Newport Center Drive, Newport Beach, CA 92660. It

has been named as a defendant to Count VII of this Complaint because it may

claim an interest in the real property discussed below.

10.     Larry T. Burger resides at 8580 Perrydale Road, Dallas, Oregon, within this

judicial district. He is named as a defendant to Count VII of this Complaint

because he may claim an interest in the real property described below.

11.     Tracie L. Burger resides at 8580 Perrydale Road, Dallas, Oregon, within this

judicial district. She is named as a defendant to Count VII of this Complaint

because she may claim an interest in the real property described below.

**Pfaff's History as a Tax-Shelter Promoter**

12.     Pfaff is a former tax partner at KPMG, where he specialized in international tax law.

13.     He is well-versed in the design, marketing, and implementation of complex tax shelters.

14.     In August 1997, Pfaff and another KPMG senior tax manager resigned from KPMG and formed new entities with the common name "Presidio" through which they promoted, marketed, and implemented abusive tax shelters involving foreign currency trades. These tax shelters are collectively referred to as "the KMPG tax shelters" and within the industry are commonly known as "FLIP," "OPIS," and "BLIPS."

15.     From 1999 to 2000, Pfaff, through Presidio, sold the KMPG tax shelters to more than 100 wealthy investors (marketed to persons earning more than $20 million per year).

16.     Pfaff earned substantial fees promoting the KMPG tax shelters. Pfaff also used the scheme to illegally shelter his own income from taxation.

17.     On August 9, 2005, Pfaff was indicted, along with eight other KPMG executives, in what is commonly known as the KMPG tax shelter case on conspiracy charges for designing and marketing fraudulent tax shelters to help wealthy individuals avoid paying taxes. *United States v. Stein et al.*, 05-cr-888, Dkt. 1 (S.D.N.Y. Aug 9, 2005).

18.     On March 18, 2008, Pfaff also was indicted on charges of conspiracy to defraud the IRS by concealing his income from the KPMG tax shelters, and for conspiracy

to defraud a Saipan company of the right to honest services. *United States v. Pfaff,* 08-cr-239, Dkt. 1 (S.D.N.Y. March 19, 2008).

19.    The 2008 indictment alleged that from 1993 and 2000, Pfaff received more than $3,750,000 in fee income from KMPG tax shelter transactions, and thereafter used the fee income for various personal purposes, including:

- to purchase his principal residence in Englewood, Colorado, a weekend home in Breckenridge, Colorado, and his mother's home in Wisconsin;
- to purchase various automobiles, including a Porsche for himself, a Mercedes Benz for his sister, and a Subaru for his wife;
- to purchase various interests in mutual funds;
- to fund various trusts for his children;
- to make gifts to family members;
- to pay initiation fees at his country club in or around Denver, Colorado;
- to renovate and landscape his Colorado home;
- to pay dentist bills; and
- to purchase a Steinway piano and Hawaiian artwork.

20.    On December 17, 2008, the jury in the KMPG tax shelter case returned a verdict finding Pfaff guilty on numerous charges in the indictment. *United States v. Stein et al.,* (minute entry).

21.    On April 1, 2009, Pfaff was sentenced to 97 months in federal prison in the KPMG tax shelter case. *United States v. Stein et al.,* Dkt. 1453.

22.    On March 4, 2010, after pleading guilty to charges of conspiracy to defraud the IRS by concealing his income from the KPMG tax shelters and other charges, Paff was sentenced to 57 months in federal prison to run concurrent with his 97-month KPMG tax shelter sentence. *United States v. Pfaff*, Dkt. 56.

**Count I**
**Reduce to Judgment Federal Income Tax Assessments against Pfaff**

23. The United States repeats and realleges the allegations in paragraphs 1 through 22 as if set forth herein.

24. For tax years 2011 and 2012, Pfaff filed federal income tax returns, Forms 1040, with the Internal Revenue Service. On these income tax returns, Pfaff reported owing tax but failed to pay what he reported as due and owing.

25. Accordingly, a delegate of the Secretary of the Treasury made assessments against Pfaff for federal income tax, interest, and penalties regarding the 2011 and 2012 tax years, with accruals as of February 1, 2025, as follows:

| Tax Year | Assessment Date | Tax Assessed | Penalties Assessed | Interest Assessed |
|---|---|---|---|---|
| 2011 | 11/12/2012 | $896,559.00 | $29,633.56 | $14,279.59 |
| 2012 | 06/13/2013 | $ 82,937.00 | $ 2,316.37 | $    334.68 |

26. The IRS gave Pfaff notices of the unpaid assessments referred to in paragraph 25, above, and made demands for payment on or about the date of each unpaid assessment.

27. Subsequently, a delegate of the Secretary of the Treasury made additional assessments against Pfaff for interest, penalties, and fees regarding the 2011 and 2011 tax years.

28. Despite the notices and demands for payment, Pfaff failed, refused, or neglected to pay his outstanding federal income tax liabilities in full.

29. As of February 1, 2025, the unpaid balance of the assessments referred to in paragraphs 25 and 27, above (including accrued interest, statutory additions, and

any credits, abatements, or payments), is $1,897,076.23. Statutory additions, including interest, continue to accrue from and after February 1, 2025.

30.     Accordingly, Pfaff is indebted to the United States for $1,897,076.23 as of February 1, 2025, for his unpaid joint income tax liabilities for tax years 2011 and 2012. Statutory additions, including interest, have accrued and will continue to accrue on the amounts owed to the United States as allowed by law until the balance is paid in full.

WHEREFORE, the United States respectfully requests that the Court enter judgment on Count I of its complaint in favor of the United States and against Robert Pfaff in the amount of $1,897,076.23, plus statutory additions that have accrued and will continue to accrue after February 1, 2025, less any payments and credits, together with such other relief as the Court deems just and proper, including awarding the United States its costs and expenses incurred in this suit.

### Count II
### Reduce to Judgment Penalty Assessments against Pfaff

31.     The United States repeats and realleges the allegations set forth in paragraphs 1 through 30 as if set forth herein.

32.     Pfaff promoted the KMPG tax shelters.

33.     Pfaff was convicted of twelve counts of tax evasion after a jury trial in the KPMG tax shelter case and sentenced to 97 months imprisonment. *United States v. Stein et al*., Dkt. 1453.

34.     Because Pfaff failed to register the KMPG tax shelters as required under 26 U.S.C. § 6111(a), on or about September 19, 2011, a delegate of the Secretary of

the Treasury assessed penalties against him under 26 U.S.C. § 6707(1)(a)

("Section 6707 penalties").

35.    The chart below shows the tax periods and amounts of the Section 6707 penalty

assessments against Pfaff, with accruals computed as of February 1, 2025:

| Tax Year | Assessment Date | Assessed Penalties | Balance Due |
|----------|-----------------|--------------------|-------------|
| 1997 | 09/19/2011 | $      252,954.00 | $    450,101.36 |
| 1998 | 09/19/2011 | $ 1,395,780.00 | $ 2,488,989.16 |
| 1999 | 09/19/2011 | $36,526,739.00 | $64,995,380.52 |
| 2000 | 09/19/2011 | $25,236,246.00 | $45,182,697.19 |

Total: $ 113,117,168.23

36.    The IRS gave Pfaff notices of the assessments referred to in paragraphs 34 and

35, above, and made demands for payment on or about the date of each

assessment.

37.    Despite the notices and demands for payment, Pfaff failed, refused, or neglected

to pay the Section 6707 penalties in full.

38.    As of February 1, 2025, the unpaid balance of the assessments referred to in

paragraphs 34 and 35, above (including accrued interest, statutory additions, and

any credits, abatements, or payments), total $113,117,168.23. Statutory additions,

including interest, continue to accrue from and after February 1, 2025.

39.    Accordingly, Pfaff is indebted to the United States for $113,117,168.23 as of

February 1, 2025, for his unpaid Section 6707 penalties for the tax periods

referred to above. Statutory additions, including interest, have accrued and will

continue to accrue on the amounts owed to the United States as allowed by law
until the balance is paid in full.

WHEREFORE, the United States respectfully requests that the Court enter judgment on
Count II of this Complaint in favor of the United States and against Robert A. Pfaff in the
amount of $113,117,168.23 plus statutory additions including interest that have accrued
and will continue to accrue from February 1, 2025, less any payments and credits,
together with such other and further relief as the Court deems just and proper, including
awarding the United States its costs and expenses incurred in this suit.

**The Left Coast Winery**

40.    The United States seeks to foreclose its federal tax liens against nine parcels of
real property in Polk County, Oregon titled to Left Coast Cellars, LLC (the "Left
Coast Cellars property"). The parcels are used by the Left Coast Estate Winery
("Left Coast Winery") for wine production.

41.    The United States also seeks to enforce its federal tax liens against Pfaff's interest
in the Goodenough Irrevocable Trust, which holds a 24 percent interest in Left
Coast Winery.

42.    The United States also seeks to enforce its federal tax liens against Pfaff's interest
in the Get Realty Trust, which holds a 24 percent interest in Left Coast Winery.

43.    Left Coast Winery states at its website that it is a "490-acre vineyard, winery, and
working farm."

44.    Left Coast Winery is located at 4225 North Pacific Highway West, Rickreall,
Oregon.

45.    According to articles in wine publications and blogs, Left Coast Winery was owned or founded in 2003 by Robert Pfaff and his wife, Suzanne Larson Pfaff.

46.    In June 2019, Left Coast Winery's website stated that the winery was founded in 2003, is "[f]amily owned and operated," and included a picture of Robert and Suzanne Pfaff.

47.    According to Suzanne Pfaff, the winery was named "Left" because three out of the five Pfaff family members are left-handed.

48.    Currently, Left Coast Winery's website continues to refer to it as a family-owned business and includes under the section "Our People" pictures of Suzanne Larson (a.k.a. Suzanne Pfaff) as the winery's Brand Ambassador and Robert Pfaff as the Master Gardener and Chef.

49.    Robert Pfaff and Suzanne Pfaff work for Left Coast Winery and receive compensation for their services.

50.    Pfaff also has access to and uses a credit card provided to him by Left Coast Winery.

**Pfaff's Use of Alter Egos to Acquire and Fund Left Coast Winery**

51.    In February 2003, the IRS began investigating Robert Pfaff for income tax owed for 1999 to 2001 tax years.

52.    While under investigation by the IRS in 2003, Pfaff used an entity known as the GET Realty Trust to conceal the purchase of land in Rickreall, Oregon that included a grape-growing operation.

53.    Pfaff, through two of his alter egos, the GET Realty Trust and the Goodenough Irrevocable Trust, invested at least $10,000,000 into the venture over the years that ensued and created the winery called Left Coast Cellars LLC.

### The GET Realty Trust

54.    Pfaff established and funded the GET Realty Trust, originally known as the W.S. Investment Trust, in 1997.

55.    Suzanne Pfaff was the purported settlor and Pfaff the original trustee.

56.    Pfaff served as the trustee of the GET Realty Trust until January 1, 2001, when his stepbrother, Thomas Sorenson, was appointed successor trustee.

57.    Under an amendment to the trust dated February 1, 2004, the name of the W.S. Investment Trust was changed to the GET Realty Trust.

58.    Although Sorenson was the successor trustee of the GET Realty Trust, he had little if any involvement with the GET Realty Trust or the Left Coast Winery.

59.    The trust agreement provides the trustee with broad powers to conduct business and invest on the trust's behalf.

60.    In an interview with the IRS, when asked about the GET Realty Trust's investments, Pfaff said stated he had broad authority to invest and that the focus was on real estate, oil, and gas.

61.    Suzanne Pfaff was not consulted about or involved in directing trust investments.

62.    In a letter to the IRS, Pfaff's representative claimed that the GET Realty Trust invested $180,000 in a successful gas and oil well operation, for which the GET Realty Trust later received $2,033,438.

63.     Pfaff's representative further claimed that the GET Realty Trust later invested $1,964,578 of this amount into Oregon real estate that ultimately because an asset of Left Coast Cellars, LLC.

64.     Pfaff's representative further claimed that in 2008, the GET Realty Trust received $6,940,408 for its interest in Los Angeles real estate.

65.     Pfaff's representative further claimed that the GET Realty Trust invested the bulk of the proceeds from the sale of Los Angeles real estate in Left Coast Winery.

66.     On December 12, 2007, Thomas Sorenson resigned as trustee and Laramie Fealty, LLC, was named as the successor trustee.

67.     On April 9, 2010, Laramie Fealty, LLC resigned as trustee and John T. Lanning was named as successor trustee.

68.     Lanning was a partner with Robert Pfaff at KPMG, and, like Pfaff, was charged and convicted for his own involvement in the marketing and implementation of the KMPG tax shelters.

69.     After notices of federal tax liens were filed against Pfaff in 2017 for income tax due for 1998 and 1999, the GET Realty Trust and Goodenough Trusts started distributing the ownership of the winery to Pfaff's children.

70.     On September 28, 2022, the IRS filed a notice of federal tax lien in Polk County, Oregon naming the GET Realty Trust as the Alter Ego of Robert A. Pfaff.

**Count III**
**Establish that the GET Realty Trust is Pfaff's Alter Ego or Nominee**

71.     The United States incorporates and re-alleges as if fully stated herein each of the allegations of paragraphs 1 through 70.

72.    The GET Realty Trust is a mere shell used by Pfaff to shield assets from tax collection.

73.    Pfaff, through the GET Realty Trust, enjoys the benefits of trust assets that have been transferred to the Left Coast Cellars property.

74.    Pfaff continues to exercise complete dominion and control over all aspects of the GET Realty Trust.

75.    The GET Realty Trust is the nominee or alter ego of Robert Pfaff.

WHEREFORE, the United States seeks a determination that the GET Realty Trust is the nominee or alter ego of Robert Pfaff.

### The Goodenough Irrevocable Trust

76.    In 2003, the IRS opened an investigation of Robert Pfaff for income tax owed for 1999 to 2001.

77.    While Pfaff was under investigation by the IRS, on August 1, 2003, the Goodenough Irrevocable Trust was created by a trust agreement notarized the same day.

78.    The trust agreement states that the grantor is Joyce Pfaff, née Goodenough (Pfaff's mother), and that the trustee is Thomas C. Sorenson (Pfaff's stepbrother), who also served as a trustee for the GET Realty Trust.

79.    Joyce Pfaff was approximately 85 years old when she signed the trust agreement.

80.     The trust agreement states that it is created for the benefit of the Pfaff's three children, Karleton, Cali, and Taylor (whose middle initials are G, E, and T).

81.    The trust agreement provides the trustee with broad powers to conduct business and invest on the trust's behalf.

82.     The trust agreement states that it is funded with $10,000 for trust purposes.

83.     Pfaff settled the trust for his mother.

84.     Pfaff had broad authority to invest the trust's assets and focused on real estate, oil, and gas.

85.     Pfaff has claimed that he took the original $10,000, invested it in municipal bonds, "hit the jackpot," and ended up yielding over $1 million a year.

86.     Pfaff has also claimed that proceeds from this "jackpot" were used by Left Coast Cellars to expand the winery.

87.     Jay Zebrowski, Pfaff's former client and friend, served as the trustee of the Goodenough Irrevocable Trust.

88.     John T. Lanning is the current trustee of the Goodenough Irrevocable Trust.

89.     Lanning was a partner with Robert Pfaff at KPMG, and, like Pfaff, was charged and convicted for his own involvement in the marketing and implementation of the KMPG tax shelter.

90.     On January 3, 2022, the IRS filed a notice of federal tax lien in Polk County, Oregon naming the Goodenough Irrevocable Trust as the Alter Ego of Robert A. Pfaff.

## Count IV
## Establish that the Goodenough Irrevocable Trust is Pfaff's Alter Ego or Nominee

91.     The United States incorporates and re-alleges as if fully stated herein each of the allegations of paragraphs 1 through 90.

92.     The Goodenough Irrevocable Trust is a mere shell used by Pfaff to shield assets from tax collection.

93.    Pfaff, through the Goodenough Irrevocable Trust, enjoys the benefits of trust

assets that have been transferred to the Left Coast winery.

94.    Pfaff continues to exercise complete dominion and control over all aspects of the

Goodenough Irrevocable Trust.

95.    The Goodenough Irrevocable Trust is the nominee or alter ego of Robert Pfaff.

WHEREFORE, the United States seeks a determination that the Goodenough Irrevocable

Trust is the nominee or alter ego of Robert Pfaff.

### Left Coast Cellars, LLC

96.    As noted above, in February 2003, the IRS began investigating Robert Pfaff for

income tax owed for 1999 to 2001 tax years.

97.    While Pfaff was under investigation by the IRS for unpaid income tax, Left Coast

Cellars, LLC was incorporated in the State of Colorado on March 17, 2004.

98.    Left Coast Cellars' Articles of Incorporation reflect that Thomas C. Sorenson,

Pfaff's stepbrother and the successor trustee to the GET Realty Trust after Pfaff,

was the Manager.

99.    The articles also reflect that Russell Murray, an attorney and friend of Pfaff, was

the registered agent.

100.    Left Coast Cellars was incorporated for the purpose of acquiring approximately

175 acres of undeveloped real estate and approximately 30 acres of newly planted

grapevines in Rickreall, Oregon, where the Left Coast winery is currently located.

101.    Left Coast Cellars was originally owned by the GET Realty Trust.

102.    Left Coast Cellars is in turn owned by Left Coast Holdings, LLC.

103.   Left Coast Holdings is in turn owned by the following person or entities with respective ownership interests:

|   |   |   |
|---|---|---|
| • | Taylor G. Pfaff (Pfaff's son) | 17.386 % |
| • | Cali E. Pfaff (Pfaff's daughter) | 17.221 % |
| • | GET Realty Trust     (Pfaff's nominee) | 24.004 % |
| • | Goodenough Irrevocable Trust (Pfaff's nominee) | 24.004 % |
| • | Ghogale Investments, LLC (third party that purchased Pfaff's other son's share) | 17.386 % |

104.   The purchase price of the initial property on which the winery was later built was $1.3 million.

105.   From 2005 to 2007, Left Coast Cellars purchased additional parcels from neighbors.

106.   The Left Coast Cellars winery was built in 2005 and later expanded in 2012.

107.   The Left Coast Cellars winery currently consists of approximately 400 acres, 130 of which are planted with grape vines.

108.   The Left Coast Cellars property contains the following parcel numbers:

> 562649
> 521127
> 521130
> 570084
> 173041
> 579099
> 579100
> 579098
> 579282

109.   The legal description of each of the nine Left Coast Cellars property parcels is described more particularly in, and is incorporated by reference by, Exhibit 1 to the Complaint.

110.   On September 22, 2003, the W.S. Investment Trust (later named the GET Realty Trust) purchased two parcels of real property in Rickreall, Oregon (521127 and 562649) for $750,000. The parcels are currently used by the winery.

111.    On January 9, 2004, the W.S. Investment Trust purchased an adjoining parcel (521130) that is currently used by the winery.

112.   On September 14, 2006, the GET Realty Trust purchased an adjoining parcel (173041) for $460,000 that is currently used by the winery.

113.   On March 23, 2009, the GET Realty Trust transferred the above four parcels to Left Coast Cellars for no consideration.

114.   On November 21, 2016, Left Coast Cellars purchased an adjacent parcel (570084) for $715,000 that is currently used by the winery.

115.   On November 28, 2018, Left Coast Cellars and another entity with bordering property made lot-line adjustments to create three new parcels owned by Left Coast Cellars (5799098, 579099, and 579100).

116.   On May 3, 2019, Left Coast Cellars purchased an adjoining parcel (579282) for $530,000 that is currently used by the winery.

117.   On March 16, 2012, later refiled on September 28, 2022, the IRS filed notices of federal tax liens in Polk County, Oregon against Pfaff for the 2011 and 2012 federal income tax liability referenced above.

118.   On November 4, 2020, later refiled January 11, 2021, the IRS filed a notice of federal tax lien in Polk County, Oregon for the 6707 penalties against Pfaff referenced above.

119. On February 10, 2025, the IRS filed a notice of federal tax lien in Polk County, Oregon, with respect to the 2011 and 2012 tax years and 6707 penalties, naming Left Coast Cellars, LLC, as the nominee of Robert A. Pfaff.

**Count V**
**Establish that Left Coast Cellars LLC is the Nominee or Alter Ego of Robert Pfaff**

120. The United States incorporates and re-alleges as if fully stated herein each of the allegations of paragraphs 1 through 119.

121. Left Coast Cellars is a mere shell used by Pfaff to shield assets from tax collection.

122. Despite Left Coast Cellars LLC having bare legal title to the Left Coast Cellars property, Pfaff has continued to enjoy the benefits of ownership of the Left Coast Cellars property.

123. Pfaff continues to exercise complete dominion and control over all aspects of the Left Coast Cellars property.

124. Left Coast Cellars LLC does not now have, nor has it ever had, any ownership or other controlling interest in the Left Coast Cellars property.

125. Left Coast Cellars LLC holds title to the Left Coast Cellar property as the nominee or alter ego of Robert Pfaff.

Wherefore, the United States seeks a determination that Left Coast Cellars LLC holds title to the Left Coast Cellars property as the nominee or alter ego of Robert Pfaff.

## Count VI
## Set Aside the Transfer of the Left Coast Cellars Properties as Fraudulent

126.  The United States incorporates and re-alleges as if fully stated herein each of the allegations of paragraphs 1 through 125.

127.  The purported conveyance of the Left Coast Cellar property was fraudulent as to the United States.

128.  By failing to pay liabilities as they became due, Pfaff is presumed to be insolvent under O.R.S. § 95.210(2).

129.  By using Left Coast Cellars LLC to acquire legal title to the Left Coast Cellars property, Pfaff acted with the intent to hinder, delay, or defraud the United States; as a result, the transfer was fraudulent and should be set aside under O.R.S. § 95.230(1)(a).

130.  Pfaff is the owner of the Left Coast Cellars property despite the legal title held by Left Coast Cellars LLC.

131.  Any claim to or interest in the Left Coast Cellars property by Left Coast Cellars LLC is fraudulent and/or non-existent. Any such claim or interest was part of a scheme to defraud Pfaff's principal creditor, the United States, and has no merit.

WHEREFORE, the United States seeks a determination that Left Coast Cellars LLC is the nominee or alter ego of Robert Pfaff and an order setting aside as fraudulent the transfer of the Left Coast Cellars property to Left Coast Cellars LLC.

## Count VII
## Enforce Federal Tax Liens against the Left Coast Cellars Property

132.  The United States incorporates and re-alleges as if fully stated herein each of the allegations of paragraphs 1 through 131.

133. By virtue of the tax and penalty assessments described above and the failure of Robert Pfaff to pay the assessed liabilities, under 26 U.S.C. §§ 6321 & 6322, federal tax liens for unpaid tax liabilities have arisen against and attached to all property and rights to property of Pfaff, including the Left Coast Cellars properties.

134. The unpaid balances of the assessments are secured by notices of federal tax lien filed in Polk County, where the Left Coast Cellars property is located.

135. Under 26 U.S.C. § 7403, the United States is entitled to enforce its federal tax liens upon the Left Coast Cellars property and Pfaff's interests in the trusts above through a judicial sale and an appointment of a receiver, and to receive the proceeds from the sale of the property to be applied towards satisfaction of the outstanding and unpaid tax assessments against Robert Pfaff, in accordance with the Court's findings as to the validity and priority of the liens and claims of all parties.

WHEREFORE, the United States respectfully requests that the Court enter an order enforcing its federal tax liens against the Left Coast Cellars Property and Pfaff's interest in the trusts, that the Left Coast Cellars property and Pfaff's interest in the trusts be ordered sold, through appointment of a receiver if necessary, and that the proceeds from the sale be distributed in accordance with the Court's findings as to the validity and priority of the liens and claims of all parties.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays:

A.        That the Court reduce to judgment the assessments against Robert A.
Pfaff for unpaid federal income tax liabilities, penalties, and interest owed for the 2011
and 2012 tax years;

B.        That the Court reduce to judgment the penalty assessments against Robert
A. Pfaff under 26 U.S.C. § 6707 for 1997, 1998, 1999, and 2000.

C.        That the Court order that the United States of America has valid liens
against Robert A. Pfaff for unpaid federal income tax liabilities, penalties, and interest
owed for 2011 and 2012, and for unpaid penalties and interest under 26 U.S.C. § 6707 for
1997, 1998, 1999, and 2000.

D.        That the Court order that the United States' federal tax liens set forth
above attach to all property and rights to property belonging to Robert A Pfaff, including
his interest in the Left Coast Cellars property;

E.        That the Court adjudge and decree that the GET Realty Trust, the
Goodenough Trust, and Left Coast Cellars, LLC hold title to the Left Coast Cellars
property as the nominee and/or alter ego of Robert A. Pfaff;

F.        That the Court adjudge and decree that the fraudulent conveyances of the
Left Coast Cellars property are of no effect as to the lien claims of the United States, and
that they be set aside;

G.        That the Court adjudge and decree that Left Coast Cellars, LLC is the
nominee and/or alter ego of Robert A. Pfaff, and any purported interest that it claims to
hold in the Left Coast Cellars property is fraudulent and invalid;

United States' Complaint
Case No.                                 21

H.      That the Court order that the federal tax liens against Robert A. Pfaff be enforced against the Left Coast Cellars property and Pfaff's interest in the trusts, that the Left Coast Cellars property and Pfaff's interest in the trusts be ordered sold, through appointment of a receiver if necessary, and that the proceeds from the sale be distributed in accordance with the Court's findings as to the validity and priority of the liens and claims of all parties; and

I.      That the United States be awarded its costs for prosecuting this action and any other relief deemed proper by the Court.

Date: February 19, 2025                      Respectfully submitted,

                                             s/Michael R. Pahl
                                             MICHAEL PAHL
                                             Trial Attorney, Tax Division
                                             U.S. Department of Justice
                                             P.O. Box 7238
                                             Washington, D.C. 20044
                                             202-598-5863
                                             michael.r.pahl@usdoj.gov

                                             Of Counsel:
                                             Natalie K. Wight
                                             United States Attorney

United States' Complaint
Case No.                          22