KEVIN PLANEGGER
Anderson & Jahde, P.C.
4582 S. Ulster Street, Suite 1350
Denver, CO 80237
Phone: 303-782-0003
Fax: 303-782-0055
kevin@andersonjahde.com

CAROL V. LAVINE
Carol Vogt Lavine, LLC
10824 SE Oak Street, #155
Milwaukie, OR 97222
Phone: 503-650-5361
Fax: 503-650-6511
carol@lavinetaxlaw.com

*Attorneys for Defendant Robert A. Pfaff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | Civil Action No. 3:25-cv-00266-AR |
| v. | **ANSWER** of Robert A. Pfaff to the United States of America's COMPLAINT to Reduce Federal Tax Assessments to Judgment and Enforce Federal Tax Liens Against Real Property |
| **ROBERT ALAN PFAFF, LEFT COAST CELLARS, LLC, THE GOODENOUGH IRREVOCABLE TRUST, THE GET REALTY TRUST, PACIFIC LIFE INSURANCE COMPANY, LARRY T. BURGER, and TRACIE L. BURGER,** | |
| Defendants. | |

Defendant Robert Alan Pfaff (hereinafter "Defendant") hereby respectfully submits to this Honorable Court his Answer to the Complaint filed by the United States of America (hereinafter "Plaintiff") on February 19, 2025, and served on the Defendant on March 12, 2025. Throughout this Answer, Robert Alan Pfaff will be referred to as "Defendant." Other defendants in this case will be referred to by name. Defendant denies each and every allegation of the Complaint which has not been specifically admitted or qualified herein. Further answering the numbered paragraphs in the Complaint, Defendant responds as follows:

1. Defendant opposes the relief sought by Plaintiff in this civil action as outlined in Paragraph 1 of the Complaint.
2. Defendant admits that this action was brought by Plaintiff pursuant to 26 U.S.C. § 7401 and § 7403. Defendant does not have sufficient knowledge to admit or deny communications which have occurred between the Attorney General of the United States and the Chief Counsel of the Internal Revenue Service or delegates thereof.
3. Defendant admits the allegations in Paragraph 3 of the Complaint.
4. Defendant admits the allegations in Paragraph 4 of the Complaint.
5. Defendant admits that he is a named Defendant in this case. Defendant further admits that he may owe federal income tax for the 2011 and 2012 tax years depending on the outcome of pending litigation in the United States Tax Court. Defendant denies the remaining averments in paragraph 5 of the Complaint.
6. Defendant admits the allegations in paragraph 6 of the Complaint.
7. Defendant admits that Goodenough Irrevocable Trust is a named Defendant in this

case, but denies the remaining averments in paragraph 7 of the Complaint.

8. Defendant admits that GET Realty Trust is named as a Defendant in this case, but denies the remaining averments in paragraph 8 of the Complaint.

9. Defendant admits that Pacific Life Insurance Company is a Defendant in this case, but does not have sufficient knowledge or information at this time to admit or deny the remaining averments in paragraph 9 of the Complaint.

10. Defendant admits that Larry T. Burger is a named Defendant in this case, but does not have sufficient knowledge or information at this time to admit or deny the remaining averments in paragraph 10 of the Complaint.

11. Defendant admits that Tracie L. Burger is a named Defendant in this case, but does not have sufficient knowledge or information at this time to admit or deny the remaining averments in paragraph 9 of the Complaint.

12. Defendant admits that he is a former partner at KPMG, and that he had expertise in international tax law.

13. Defendant denies that he is currently "well-versed" in the design, marketing, and implementation of complex tax shelters; Defendant admits that he had knowledge of the design, marketing, and implementation of complex tax shelters in the late 1990s and early 2000s.

14. Defendant admits that he and another KPMG senior tax manager resigned from KPMG in 1997 and formed new entities with the common name "Presidio" through which they promoted, marketed, and implemented tax shelters, some of which involved foreign currency trades. Defendant admits that these tax shelters were collectively referred to as the "the KPMG tax shelters" and within the industry were commonly known as

"FLIP," "OPIS," and "BLIPS."

15. Defendant admits that he, through Presidio, sold KPMG tax shelters to more than 100 wealthy investors.

16. Defendant admits the allegations in paragraph 16 of the Complaint.

17. Defendant admits the allegations in paragraph 17 of the Complaint.

18. Defendant admits the allegations in paragraph 18 of the Complaint.

19. Defendant admits the allegations in paragraph 19 of the Complaint.

20. Defendant admits that the jury in the KPMG tax shelter case returned a verdict finding Pfaff guilty on numerous charges in the indictment, and finding him not guilty on other charges in the indictment.

21. Defendant admits the allegations in paragraph 21 of the Complaint.

22. Defendant admits the allegations in paragraph 22 of the Complaint.

23. Defendant incorporates by reference all prior responses to the allegations set forth in paragraphs 1 through 22 of the Complaint.

24. Defendant admits that he filed federal income tax returns for the 2011 and 2012 tax years, and reported owing income tax of $886,559 on the 2011 return and income tax of $82,937 on the 2012 return. The overwhelming majority of the total tax liability on the 2011 and 2012 income tax returns was attributable to retirement account distributions that the Internal Revenue Service is simultaneously seeking to tax in earlier years in currently pending litigation in the United States Tax Court. Defendant acknowledges that the 2011 and 2012 income tax assessments remain unpaid, but Defendant paid $2,000,000 from the retirement account distributions toward his estimated tax liability for the 1998, 1999 and 2000 tax years, and

therefore, denies that he failed to pay tax that was due and owing. Defendant is not required to pay tax twice on the same item of income.

25. Defendant admits the allegations in paragraph 25 of the Complaint.

26. Defendant admits the allegations in paragraph 26 of the Complaint.

27. Defendant admits the allegations in paragraph 27 of the Complaint.

28. Defendant admits that the 2011 and 2012 income tax assessments remain unpaid, but denies that he failed, refused, or neglected to pay his outstanding federal income tax liabilities in full. Defendant used $2,000,000 of the retirement account proceeds to pay toward his possible tax liability for this income due to the IRS position that the income should have been reported in earlier years.

29. Defendant admits the allegations in paragraph 29 of the Complaint.

30. Defendant denies the allegations in paragraph 30 of the Complaint.

31. Defendant incorporates by reference all prior responses to the allegations set forth in paragraphs 1 through 30 of the Complaint.

32. Defendant admits that he, through Presidio, promoted the KPMG tax shelters.

33. Defendant admits the allegations in paragraph 33 of the Complaint.

34. Defendant denies that he was required to register the KPMG tax shelters, but admits that there were penalty assessments made on September 19, 2011 pursuant to a pre-2004 (before amendment by the American Jobs Creation Act of 2004) version of 26 U.S.C. § 6707(a)(1). Defendant further denies the veracity, legality, and amount of the September 19, 2011 assessments even if he was required to register the KPMG tax shelters. Defendant denies for lack of knowledge the remaining averments in paragraph 34 as to the individual who allegedly made the assessments.

35. Defendant admits that the chart included in paragraph 35 accurately sets forth the tax years and assessment dates of the promoter penalty assessments against the Defendant. Defendant denies that the chart in paragraph 35 accurately sets forth the original assessed amounts or the current balance due amounts. The original penalty assessments were $1,397,574 for the 1997 year; $17,824,803 for the 1998 year; $105,039,593 for the 1999 year; and $35,970,056 for the 2000 year (the assessments totaled $160,232,026). Defendant received credit against those assessments for payments made by joint and several co-obligors (KPMG, Deutsche Bank and others). These other payments, according to public information/press releases, totaled at least $300,000,000, but the Internal Revenue Service only credited the Defendant's accounts with approximately $95,000,000, and failed to provide any documentation or methodology for their partial allocation. The Plaintiff's alleged balance due amounts in the chart are also erroneous. Defendant has specific knowledge of other payments made by joint and several co-obligors that were not credited to Defendant's balance as required by law.

36. Defendant admits the allegations in paragraph 36 of the Complaint.

37. Defendant admits that he did not pay the Section 6707 penalty in full. Defendant denies that he refused or neglected to pay the balance and denies any implication from the words "refused" or "neglected" that he had the ability to make full payment, and made a conscious decision not to pay. The United States had knowledge of Defendant's limited financial resources, and proceeded to assess a penalty in an amount that exceeded $160,000,000. Further, Defendant consistently cooperated with Plaintiff's requests for financial information, and submitted two separate offers in

compromise to make payment based on his full payment potential.

38. Defendant denies that the unpaid balance of the assessments referred to in paragraphs 34 and 35, above (including accrued interest, statutory additions, and any credits, abatements, or payments), total $113,117,168.23. Based on information and belief, Defendant contends that payments from other joint and several co-obligors of this liability have not been properly allocated and credited to Mr. Pfaff's assessments, and that the unpaid balance of the promoter penalty assessments is certainly much less, and may be paid in full. As set forth above in paragraph 35 of this Answer, Defendant has specific knowledge of other payments by joint and several co-obligors that were not credited to Defendant's assessments. Defendant admits that statutory additions including interest, continue to accrue on the correct amounts owed (if any) to the United States as allowed by law until the correct balance (if any) is paid in full.

39. Defendant denies the allegations in paragraph 39 of the Complaint. Defendant denies that he is indebted to the United States for any unpaid (pre-2004) Section 6707 penalty.

40. Defendant admits the United States has brought this action and seeks to foreclose its federal tax liens against nine parcels of real property in Polk County, Oregon. Defendant admits that some of the parcels are used for wine production.

41. Defendant admits the United States has brought this action and seeks to foreclose against its federal tax liens against Defendant's alleged interest in Goodenough Irrevocable Trust, which holds an interest in Left Coast Winery. Defendant denies that he has any interest in the Goodenough Irrevocable Trust.

42. Defendant admits the United States has brought this action and seeks to foreclose

against its federal tax liens against Defendant's alleged interest in Get Realty Trust, which holds an interest in Left Coast Winery. Defendant denies that he has any interest in the Get Realty Trust.

43. Defendant denies the allegations in paragraph 43 of the Complaint.
44. Defendant admits the allegations in paragraph 44 of the Complaint.
45. Defendant does not have sufficient knowledge or information at this time to admit or deny the allegations in paragraph 45 of the Complaint.
46. Defendant does not have sufficient knowledge or information at this time to admit or deny the allegations in paragraph 46 of the Complaint.
47. Defendant admits the allegations in paragraph 47 of the Complaint.
48. Defendant admits that the Left Coast Winery's website refers to it as a family-owned business, but does not have sufficient knowledge or information at this time to admit or deny the remaining allegations in paragraph 48 of the Complaint.
49. Defendant admits that he and Suzanne Pfaff have worked for Left Coast and have received compensation for their services.
50. Defendant admits that he has had, but does not currently have, access to a Left Coast Winery credit card in the past for business purchases related to his employment as a gardener and chef.
51. Defendant admits that the IRS began an investigation for income tax owed for the 1998 through 2002 tax years, but Defendant does not have sufficient knowledge or information to admit or deny when such investigation began.
52. Defendant denies the allegations in paragraph 52 of the Complaint.
53. Defendant denies the allegations in paragraph 53 of the Complaint.

54. Defendant denies the allegations in paragraph 54 of the Complaint.
55. Defendant admits that Suzanne was the settlor of the W.S. Investment Trust, and Defendant was the original trustee, but denies the remaining averments in paragraph 55 of the Complaint.
56. Defendant admits the allegations in paragraph 56 of the Complaint, except denies that Thomas Sorenson was his stepbrother.
57. Defendant admits the allegations in paragraph 57 of the Complaint.
58. Defendant denies the allegations in paragraph 58 of the Complaint.
59. Defendant admits the allegations in paragraph 59 of the Complaint.
60. Defendant does not have sufficient knowledge or recollection at this time to admit or deny the allegations regarding the specifics of what he told IRS in an interview, but Defendant admits that he had broad authority as the trustee.
61. Defendant admits the allegations in paragraph 61 of the Complaint.
62. Defendant admits the allegations in paragraph 62 of the Complaint.
63. Defendant admits the allegations in paragraph 63 of the Complaint.
64. Defendant admits the allegations in paragraph 64 of the Complaint.
65. Defendant admits the allegations in paragraph 65 of the Complaint.
66. Defendant admits the allegations in paragraph 66 of the Complaint.
67. Defendant admits the allegations in paragraph 67 of the Complaint.
68. Defendant admits that John Lanning was a partner with him at KPMG and was criminally charged in the KPMG tax shelter case. Defendant denies that John Lanning was convicted; all charges against him were dismissed due to prosecutorial misconduct that "shock[ed] the conscience" according to Federal District Court

Judge Lewis Kaplan.

69. Defendant admits that GET Realty Trust and Goodenough Trust distributed ownership interests to the Defendant's children, but denies the remaining averments in paragraph 69 of the Complaint. Defendant specifically denies any allegation that the erroneous and illegal lien filed against him in 2017 had any impact on trust distributions. The 2017 lien (for alleged income tax due for the Defendant's 1998 and 1999 tax years) was attributable to a second assessment of tax on the same items of income. Defendant was previously assessed income tax for the 1998 and 1999 tax years in 2005, and he paid over $9,000,000 to pay those tax assessments in full. Due to negligence, incompetence or malfeasance, the United States made additional assessments of tax in 2012, 2013 and 2016 attributable to some of the same income adjustments. IRS counsel in Defendant's currently pending Tax Court case acknowledges the duplicative assessment and acknowledges that the Defendant only has to pay tax once on a single item of income, but the erroneous and illegal federal tax lien remains in place.

70. Defendant admits that a lien was recorded in Polk County on September 28, 2022 that names GET Realty Trust as the Alter Ego of Robert A. Pfaff.

71. Defendant incorporates by reference all prior responses to the allegations set forth in paragraphs 1 through 70 of the Complaint.

72. Defendant denies the allegations in paragraph 72 of the Complaint.

73. Defendant denies the allegations in paragraph 73 of the Complaint.

74. Defendant denies the allegations in paragraph 74 of the Complaint.

75. Defendant denies the allegations in paragraph 75 of the Complaint.

76. Defendant admits that the IRS began an investigation for income tax owed for the

      1998 through 2002 tax years, but Defendant does not have sufficient knowledge or information to admit or deny when such investigation began.

77. Defendant admits that the Goodenough Irrevocable Trust was created by trust agreement in 2003. Defendant also admits that the IRS began an investigation for income tax owed for the 1998 through 2002 tax years, but Defendant does not have sufficient knowledge or information to admit or deny when such investigation began.

78. Defendant admits the allegations in paragraph 78 of the Complaint, except denies that Thomas Sorenson is Defendant's stepbrother.

79. Defendant admits the allegations in paragraph 79 of the Complaint.

80. Defendant admits the allegations in paragraph 80 of the Complaint.

81. Defendant admits the allegations in paragraph 81 of the Complaint.

82. Defendant admits the allegations in paragraph 82 of the Complaint.

83. Defendant denies the allegations in paragraph 83 of the Complaint.

84. Defendant admits the allegations in paragraph 84 of the Complaint.

85. Defendant does not have sufficient knowledge or recollection at this time to admit or deny the allegations regarding the specifics of "claims" that he may have made about his actions as trustee.

86. Defendant does not have sufficient knowledge or recollection at this time to admit or deny the allegations regarding the specifics of "claims" that he may have made about his actions as trustee

87. Defendant admits the allegations in paragraph 87 of the Complaint.

88. Defendant admits the allegations in paragraph 88 of the Complaint.

89. Defendant admits that John Lanning was a partner with him at KPMG and was criminally charged in the KPMG tax shelter case. Defendant denies that John Lanning was convicted; all charges against him were dismissed due to prosecutorial misconduct that "shock[ed] the conscience" according to Federal District Court Judge Lewis Kaplan.

90. Defendant admits that a Notice of Federal Tax Lien was recorded in Polk County on January 3, 2022 in the name of Goodenough Irrevocable Trust as the Alter Ego of Robert A. Pfaff.

91. Defendant incorporates by reference all prior responses to the allegations set forth in paragraphs 1 through 90 of the Complaint.

92. Defendant denies the allegations in paragraph 92 of the Complaint.

93. Defendant denies the allegations in paragraph 93 of the Complaint.

94. Defendant denies the allegations in paragraph 94 of the Complaint.

95. Defendant denies the allegations in paragraph 95 of the Complaint.

96. Defendant admits that the IRS began an investigation for income tax owed for the 1998 through 2002 tax years, but Defendant does not have sufficient knowledge or information to admit or deny when such investigation began.

97. Defendant admits that Left Coast Cellars, LLC was incorporated in the State of Colorado in 2004, and further admits that the IRS began an investigation for income tax owed for the 1998 through 2002 tax years, but Defendant does not have sufficient knowledge or information to admit or deny when such investigation began.

98. Defendant admits the allegations in paragraph 98 of the Complaint, but denies that Thomas Sorenson is Defendant's stepbrother.

99. Defendant admits the allegations in paragraph 99 of the Complaint.

100. Defendant admits that Left Coast Winery is currently located in Rickreall, Oregon, but denies the remaining allegations in paragraph 100 of the Complaint.

101. Defendant admits the allegations in paragraph 101 of the Complaint.

102. Defendant admits the allegations in paragraph 102 of the Complaint.

103. Defendant admits that Taylor G. Pfaff, Cali E. Pfaff, GET Realty Trust, Goodenough Irrevocable Trust, and Ghogale Investments, LLC have ownership interests in Left Coast Holdings, but denies that percentage ownership interests set forth in paragraph 103 are correct.

104. Defendant admits that the purchase price for the initial property on which the winery was built was approximately $1.3 million.

105. Defendant admits the allegations in paragraph 105 of the Complaint.

106. Defendant admits the allegations in paragraph 106 of the Complaint.

107. Defendant admits the allegations in paragraph 107 of the Complaint.

108. Defendant admits the allegations in paragraph 108 of the Complaint.

109. Defendant admits the allegations in paragraph 109 of the Complaint.

110. Defendant admits the allegations in paragraph 110 of the Complaint, except denies that the purchase date was September 22, 2003.

111. Defendant admits the allegations in paragraph 111 of the Complaint.

112. Defendant admits the allegations in paragraph 112 of the Complaint, except denies that the purchase date was September 14, 2006.

113. Defendant admits that the GET Realty Trust transferred four parcels of real property to Left Coast Cellars, LLC in 2009.

114. Defendant admits that Left Coast Cellars purchased an adjacent parcel of real estate for $715,000 in 2016, but denies the remaining allegations in paragraph 114 of the Complaint.

115. Defendant admits the allegations in paragraph 115 of the Complaint.

116. Defendant admits the allegations in paragraph 116 of the Complaint.

117. Defendant admits that a Notice of Federal Tax Lien Refile was recorded in Polk County, Oregon against him on September 28, 2022 for his 2011 and 2012 income tax liabilities.

118. Defendant admits that a Notice of Federal Tax Refile was recorded in Polk County, Oregon against him on January 11, 2021 for Section 6707 promoter penalty assessments.

119. Defendant admits that a Notice of Federal Tax Lien was recorded in Polk County, Oregon on February 10, 2025 with respect to his income tax liabilities and Section 6707 promoter penalty assessments, and naming Left Coast Cellars, LLC as the nominee of Robert A. Pfaff.

120. Defendant incorporates by reference all prior responses to the allegations set forth in paragraphs 1 through 119 of the Complaint.

121. Defendant denies the allegations in paragraph 121 of the Complaint.

122. Defendant denies the allegations in paragraph 122 of the Complaint.

123. Defendant denies the allegations in paragraph 123 of the Complaint.

124. Defendant denies the allegations in paragraph 124 of the Complaint.

125. Defendant denies the allegations in paragraph 125 of the Complaint.

126. Defendant incorporates by reference all prior responses to the allegations set forth

in paragraphs 1 through 125 of the Complaint.

127. Defendant denies the allegations in paragraph 127 of the Complaint.

128. Defendant denies the allegations in paragraph 128 of the Complaint.

129. Defendant denies the allegations in paragraph 129 of the Complaint.

130. Defendant denies the allegations in paragraph 130 of the Complaint.

131. Defendant denies the allegations in paragraph 131 of the Complaint.

132. Defendant incorporates by reference all prior responses to the allegations set forth in paragraphs 1 through 131 of the Complaint.

133. Defendant denies the allegations in paragraph 133 of the Complaint.

134. Defendant denies the allegations in paragraph 134 of the Complaint.

135. Defendant denies the allegations in paragraph 135 of the Complaint.

136. Defendant opposes the relief requested in paragraphs A through I in Plaintiff's Prayer for Relief on pages 21 and 22 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

137. Plaintiff fails to state a claim on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

138. Plaintiff's claims are barred to the extent Plaintiff has not joined all indispensable parties.

## THIRD AFFIRMATIVE DEFENSE

139. Plaintiff's claims are barred or diminished to the extent Plaintiff did not satisfy certain legal and/or administrative requirements prior to bringing this action. Plaintiff's claims

are also barred or diminished for Plaintiff's failure to exhaust available administrative remedies.

### FOURTH AFFIRMATIVE DEFENSE

140. Plaintiff's claims are barred by the statute of limitations on assessment.

### FIFTH AFFIRMATIVE DEFENSE

141. Plaintiff's claims are barred by the statute of limitations on collection.

### SIXTH AFFIRMATIVE DEFENSE

142. Plaintiff's claims are barred or diminished to the extent Defendant does not owe the assessments at issue. As used in this paragraph and in paragraphs 141 through 143 "assessments at issue" include the federal income tax, penalty, and interest assessments against Defendant as described in Count I of the Complaint and the penalties and interest assessed against Defendant as described in Count II of the Complaint. "Assessments at issue" also refer to or include total and/or current balance due as alleged by Plaintiff.

### SEVENTH AFFIRMATIVE DEFENSE

143. The IRS incorrectly and improperly calculated the amount of any possible penalties under Section 6707 such that the total amount of $160,232,026 is excessive and should be disallowed or substantially reduced.

### EIGHTH AFFIRMATIVE DEFENSE

144. Plaintiff's claims are barred or diminished to the extent Plaintiff has failed to give proper credit for any and all payments made by Defendant to the assessments at issue.

## NINTH AFFIRMATIVE DEFENSE

145. Plaintiff's claims are barred or diminished to the extent Plaintiff has failed to give proper credit for any and all payments made by co-obligors who are jointly and severally liable for the promoter penalty assessments at issue in this case.

146. Based on public information, Defendant is aware of at least $300,000,000 of payments made by co-obligors toward these same promoter penalties, most notably KPMG ($100,000,000 payment), and Deutsche Bank ($149,839,000).

147. Defendant is also aware of specific payments made by another co-obligor that were not credited to the Defendant's alleged liability for the promoter penalty.

## TENTH AFFIRMATIVE DEFENSE

148. Plaintiff's claims are barred because, apart from Defendant Robert C. Pfaff, any and all other parties named by Plaintiff as Defendants in the Complaint are not liable for the assessments at issue.

## ELEVENTH AFFIRMATIVE DEFENSE

149. Plaintiff's claims are barred to the extent that relief requested in the Complaint violates Defendant's rights under the Eighth Amendment of the U.S. Constitution, as the government cannot impose "excessive fines." U.S. Const. amend. VIII.

150. The penalties and interest described in Count II of the Complaint are subject to the constraints and limits set forth in the Eighth Amendment.

151. The promoter penalties assessed against Defendant in the amount of $160,232,026 for allegedly failing to file required registration forms are punitive, excessive, and grossly disproportional to the conduct the government seeks to punish.

## TWELFTH AFFIRMATIVE DEFENSE

152. Plaintiff's claims are barred to the extent that relief requested in the Complaint violates Defendant's right to due process as conferred to him under the Fifth Amendment of the U.S. Constitution.

153. The IRS revenue agents in this case conspired to manipulate the clear statutory language to assess promoter penalties in amounts that they knew would be impossible for the Defendant to pay, and therefore, impossible for the Defendant to obtain any substantive administrative or judicial review of his alleged liability.

154. The IRS revenue agents in this case engaged in a pattern of misconduct to similarly assess unconscionably large penalty amounts against other individuals that would not be subject to timely administrative or judicial review.

155. The Plaintiff brings this action now to reduce assessments to judgment, 28 years after the initial alleged conduct that is the basis for these penalties. The Defendant's first opportunity to challenge these illegal assessments is unconstitutionally hindered by the passage of time.

## THIRTEENTH AFFIRMATIVE DEFENSE

156. Plaintiff's claims are barred or diminished by estoppel.

## FOURTEENTH AFFIRMATIVE DEFENSE

157. Plaintiff's claims are barred or diminished to the extent they violate principles of equity. This Court has discretion, including equitable discretion, in granting any relief requested under 26 U.S.C. § 7403.

## RESERVATION OF OTHER DEFENSES

158. Defendant reserves the right to add any affirmative defenses as the same becomes known to him through disclosure or discovery in this case.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this answer: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the answer otherwise complies with the requirements of Rule 11.

WHEREFORE, the Defendant respectfully requests this Court:

A. Dismiss the Complaint in this case with prejudice with denial of all relief sought by the Plaintiff.

B. Enter judgment on behalf of the Defendant that he does not have any liability for the so-called Section 6707 promoter penalty, and/or that any liability has been paid in full.

C. Enter judgment on behalf of the Defendant that he does not have any income tax liability for the 2011 and 2012 tax years;

D. Enter judgment on behalf of the Defendant that the liens filed against him (and alleged alter-ego/nominees) are invalid and must be withdrawn.

E. Award costs of this lawsuit and attorney fees incurred by Defendant in defense of this lawsuit;

F. Grant such other and further relief as this Court deems just and proper.

DATED at Denver, Colorado this 2nd day of April, 2025.

                s/ Kevin A. Planegger
                Kevin A. Planegger
                ANDERSON & JAHDE, P.C
                4582 S. Ulster Street, Suite 1350
                Denver, Colorado 80237
                Phone: 303-782-0003
                Fax: 303-782-0055
                Email: Kevin@AndersonJahde.com

                Attorney for Defendant Robert A. Pfaff